PETER HERBST & others *vs.* FIDELIA MUSICAL AND EDUCATIONAL CORPORATION & others.

Essex.   March 23, 1914. — May 25, 1914.

Present: RUGG, C. J., HAMMOND, LORING, SHELDON, & CROSBY, JJ.

*Voluntary Association.   Equity Pleading and Practice,* Parties, Appeal.

A bill in equity cannot be maintained by a voluntary unincorporated association in the name of the association.   In the present suit, the association being described as composed of three individuals "and many other members too numerous to mention," the bill was treated as if it had been brought by those individuals suing in behalf of themselves and of all the other members of the association.

Where in a suit in equity, which was referred to a master, the hearing before the master was confined by agreement of the parties to two issues, all other averments of the bill being taken as admitted, a motion, presented to the master after the first draft of his report was submitted to the parties, seeking a reopening of the hearings for the hearing and reporting of evidence on certain specified issues, should be denied by the master, where it appears that some of the specifications in the motion relate to issues other than the two to which by agreement the hearings were confined and the master finds that those two issues have been fully tried; and, after the filing of the master's report, a motion to recommit it to the master based on the same grounds properly may be denied.

BILL IN EQUITY, annexed to a common law writ dated December 13, 1911, in which the plaintiffs were described as "the New England States Sangerbund, a voluntary association consisting of delegates from German singing societies situated in New England," composed of Peter Herbst, Herman Teichert, Joseph Reininger "and many other members too numerous to mention," and the defendants were the Fidelia Musical and Educational Corporation and certain of its officers and members.

The allegations of the bill in substance were that the San-

gerbund was formed for the purpose of holding a prize singing contest once in every two years at which a prize cup, which was under the control, supervision and disposition of the plaintiffs as a trophy or prize, was delivered to such singing society as might be awarded the first prize and was held by that society until the determination of the next contest; that among the rules and regulations of the contest, accepted by the participating societies, were rules that no competing society should employ any professional singers, that all singers should be regular *bona fide* members of the competing society, and that all members of the singing section of the competing societies should take part in a mass concert held at or about the time of the singing contest; that at a contest held at Pawtucket, Rhode Island, on July 2, 1911, the first prize was awarded by judges to the defendant corporation, subject to protests because of alleged infractions of the above described rules and regulations by the defendant corporation, and that later the cup was delivered to the defendant corporation, that defendant agreeing that it would return it to the plaintiffs if upon a hearing held on the protests the Sangerbund should find that the rules and regulations had been violated as charged; that a hearing was held at which the defendant corporation was represented and heard, that it was found by the Sangerbund that the defendant had violated the rules and regulations and it was ordered that the cup be returned; but that the defendants refused to return it. The prayers of the bill were for an order for a return of the cup.

The suit was referred to H. Ashley Bowen, Esquire, as master, "to hear the parties and their evidence and report his findings to the court, together with such facts and questions of law as either party may request."

The master's report contained the following findings:

"No question was raised by the defendant as to the adequacy of the protest, the regularity of the meetings of the plaintiff, or the authority of the plaintiff to bring the bill of complaint, and it was agreed that aside from two questions, the allegations in the plaintiff's bill should be taken as true." These questions were, whether the defendant corporation employed professional singers in their behalf at the song fest, and whether a number of these men who competed for the defendant corporation were not *bona*

*fide* members of the club in accordance with the rules and regulations of that association.

Both counsel agreed that, if the defendants violated the by-laws bearing on the question just stated, it was not entitled to the cup which it admitted it held upon the claim that it was duly awarded it, and that it had violated none of the plaintiffs' by-laws.

It was agreed by the parties that the material portions of the by-laws of the defendant relating to membership were as follows: "Article III, Section 3: Proposals for membership must be presented to the executive board whose duty it will be to examine the candidate and report at the next following meeting of the society, whereupon the names are placed on the slate. Candidates must be presented at the meeting before being voted on, and must receive three-fourths of the votes in his favour. Admission fee into the society to be two dollars, and must be paid to the treasurer at the time of the proposal. Section 4: Each member pays annually two dollars in quarterly payments in the months of March, June, September and December."

The records of the defendant corporation showed a vote passed by the members of the defendant under date of January 6, 1910, that "English speaking members can be taken into this club, and these candidates have to be taken in the same as any German member." This vote appeared not to have been rescinded or affected by any subsequent action of the members of the defendant corporation. On September 29, 1910, the executive board passed a vote "that singers shall be taken into the club without paying the entry fee, without dues for the year" and that "the executive board shall take the singers in themselves, the executive board alone."

"It appeared by uncontradicted evidence, that the executive board of the defendant purported on November 3, 1910, to admit to membership in the defendant eleven passive members; on November 24 the executive board purported to elect to membership nineteen passive members; on December 29, 1910, the executive board purported to elect to membership five passive members. It was a practice in this corporation for the executive board's records to be read and approved at the first meeting of the corporation following the meeting of the executive committee. This record of September 29 quoted was read and approved by

the corporation, likewise were the subsequent records of meetings of the executive board, at which it purported to admit the members referred to on November 3, November 24 and December 29. No other action was taken by the defendant, either to authorize the executive board to elect members, or to vote on the admission of these members as approved by the executive board. Just how many of these thirty-five men took part in the song festival was not definitely shown. Several of them did. None of these men have ever paid admission fee or dues.

"During this period between September 29, 1910, and June 1, 1911, applicants for admission to regular membership of the defendant were admitted to the corporation in the manner prescribed by Section 3 of Article III of the by-laws of that corporation, quoted above.

" Two of the men who were among the number purporting to have been admitted by the executive board of the defendant alone, and who participated in the song festival for the cup in question, were singing regularly in church quartets, and received money as compensation for their services, though both had other business which consumed the larger part of their time. Both had sung in church quartets for a number of years before, and had received money as compensation therefor, and one of them had previously been a member of a quartet which made a business of singing whenever engagements could be secured, up to and about a year before the song festival in question.

"The term 'professional singer' appears not to have been used in any special sense; was never defined by the association, and if it is within my province to find whether or not these men were professional singers, I find in the affirmative; that singing was a part of their business which they professed to understand and to follow for subsistence."

After the submission by the master to the parties of his draft report, the defendants filed with him a motion that the hearing be reopened for the hearing and reporting of evidence on issues other than those to which the master had found that the hearing was confined by agreement of the parties, and also of further evidence (not further described in the record) on those two issues. The master denied the motion, finding that all other questions than those contained in the two issues described by the master

were expressly waived by the defendants, and that those two "issues were fully heard, unless certain testimony which was excluded as not being competent should have been admitted, and as to this testimony, the question of its admissibility cannot be determined by a reopening of the case. Moreover, this testimony as stated in substance by counsel, even if admitted would not alter the finding."

. The defendants submitted ninety-seven requests for rulings to the master, filed seventy-four objections to the report and thirty-five exceptions based on the objections. Of the exceptions, twenty-eight related solely to findings of fact made by the master, to refusals by him to make findings of fact requested by the defendants, to refusals by him to make rulings of law, and to refusals to report evidence on questions not relating to the exclusion or admission of evidence.

The eighteenth exception was to the exclusion by the master "of testimony of several of the defendant's officers who were present at the defendant's monthly meetings next following the executive board's meetings of October 27, November 24 and December 29 of 1910 as to the methods employed by the defendant in 'Reading and approving' said votes of the executive board."

The only mention in the record of testimony by an officer of the defendants, stated in the record to have been excluded, was as follows: "The question was asked by counsel for the defendant of Frank Kreiz, who was treasurer of the club and a member of the executive committee, in October, 1910, 'Whether or not it was recommended that the by-laws should be suspended at that time?' It was objected to by counsel for the plaintiff and the objection was sustained on the ground that it was secondary evidence and no basis had been laid therefor, the record of the meeting not having been put in evidence."

The twenty-second, twenty-third, twenty-fourth and twenty-fifth exceptions were in substance to the exclusion by the master of "all evidence both by experts and regular witnesses, bearing upon the true interpretation of the term 'professional singer' as applicable to singing societies," and particularly to testimony of one Thomas H. Rollinson, of one Hugh J. McGinnes, of one Fritz Afholderbach and of one Benjamin Gluckenberger. The only

evidence of the nature described shown in the record to have been excluded was the following:

Rollinson, the musical editor and department manager of Oliver Ditson Company, testified that as an incident to his work he had occasion to study music and musicians, and had written several articles thereon; that he had been in contact with professional and amateur instrumental musicians and had discussed with them the question of professionalism in music; and that he supposed that "the same word" applied to instrumental musicians as to singing musicians as to the interpretation of the term "professional." He then was asked the following questions, all of which were objected to, and the objections were sustained: "What is your attitude with regard to it?" "What constitutes a professional musician or singer?" He then testified that he was not familiar with the practices that prevail among German singing societies of the State of Massachusetts with regard to the term "professional singer" although he was familiar with that practice as it prevailed among other musical societies or band societies, and that he had not made an investigation as to the use of the words "professional singer" in German singing societies in the State of Massachusetts.

Hugh J. McGinnes testified that he was a member of the Providence Maennerchor and sang on July 2, 1911, at Pawtucket; that the Providence Maennerchor was one of the societies constituting the New England Sangerbund. He then was asked if he sang for money, and whether he ever sang for money outside. The questions were objected to, and the objections were sustained.

Franz Afholderbach was asked, "Do you know whether or not efforts were made to keep professional singers from singing in the Fidelia in 1911?" The plaintiffs objected and the objection was sustained.

The only testimony of Gluckenberger which the record shows was excluded is the following question: "Has any evidence been presented by the plaintiff to the effect that every member of this organization must have been a member six months before the prize singing July 2, 1911?"

The defendants' twenty-ninth exception was to the ruling of the master denying its motion to reopen the hearing.

A motion to recommit the report to the master, based on

grounds similar to those stated in the motion to reopen the hearing before the master, was denied, the exceptions were overruled, the report of the master was confirmed and a final decree for the plaintiffs was ordered by *Fox*, J.  The defendants appealed.

The case was submitted on briefs.

*G. B. Hayward & R. H. O. Schulz*, for the defendant corporation.

*J. C. Sanborn*, for the plaintiffs.

SHELDON, J.  This bill, though wrongly entitled, is treated as if brought by the individuals named in it as plaintiffs, suing in behalf of themselves and all the other members of the voluntary association.  It could not have been maintained by the voluntary association itself.  *Pickett* v. *Walsh*, 192 Mass. 572, 589.  *L. D. Willcutt & Sons Co.* v. *Driscoll*, 200 Mass. 110, 111.

At the hearing before the master, only two questions were in dispute, and it was agreed that in other respects all the averments of the bill were admitted.  Those questions were whether the defendant corporation had employed professional singers in the prize singing contest and whether some of those who competed for it in that contest were not *bona fide* members thereof.  The constitution and by-laws of the plaintiffs' association provided that no professional singers should be employed; and it was agreed that if the defendant corporation had violated those by-laws, it was not entitled to hold the cup for the possession of which the bill was brought.

These two issues were found against the defendants.  Unless some of the exceptions to the master's report should have been sustained, or the report should have been recommitted to the master, it is plain that the decree against them was correct.

The judge was not bound to grant the motion to recommit. No reason appears why there should be any hearing as to matters which once had been agreed; and it is not, and apparently was not, shown that as to matters which were contested there was any real occasion for a further hearing.  The motion rightly was denied.

We see no ground for sustaining any of the exceptions to the report.  Those which relate to findings of fact must be overruled, because we have not before us all the evidence.  Many of the others are immaterial, and ought not to have been argued.  We find no error in any of the rulings of the master that have been

excepted to upon the admission or exclusion of evidence. As to several of these, it does not appear what evidence was ruled upon, and for that reason no error is shown. The master was not ordered to report the evidence and properly declined to do so. His refusal to reopen the hearings for the admission of further evidence before settling his final report does not appear to have been erroneous.

The order in the final decree that "the defendant" return and redeliver the prize cup to the plaintiffs was intended without doubt to include all the parties defendant. It should be modified to make that certain. With that modification, the decree is to be affirmed with the costs of this appeal.

*So ordered.*